## GULF, C. & S. F. RY. CO. v. GROSS.
## (No. 373.)

(Court of Civil Appeals of Texas. Beaumont. May 29, 1918. Rehearing Denied June 19, 1918.)

1. CARRIERS ⬩213 — SHIPMENTS OF LIVE STOCK—EXCUSE FOR DELAY.

Where the carrier knows, when cattle are received for shipment, that a washout exists on its line, but fails to advise the shipper or stipulate against the consequences thereof, but promises prompt shipment, the carrier is not excused from liability for delay caused by the washout as an unavoidable casualty or act of God.

2. CARRIERS ⬩212 — SHIPMENT OF LIVE STOCK—DELIVERY.

The arrival of train carrying a shipment of live stock, in the switching yards of the carrier three or four miles from the stockyards which is the destination of the shipment, is not a delivery completing the shipment.

3. TRIAL ⬩251(3)—INSTRUCTIONS—ISSUES.

In action for delay in live stock shipment, where, under the issues submitted, no damage arising after the delivery of the shipment to certain stockyards, which was the destination called for, could have been considered by the jury, it was proper to refuse the carrier's requested charges that its liability terminated upon delivery to the stockyards.

4. CARRIERS ⧉➞229(2) — LIVE STOCK SHIP-
MENTS—DAMAGES FOR DELAY.

In actions for damages for delay of ship-
ment of live stock, the measure of damages is
the difference between the reasonable market
value of the shipment at place of destination
at the time it should have arrived, if handled
in the usual and customary time, and the rea-
sonable market value of the shipment at the
time and in the condition in which it actually
arrived at destination.

Appeal from Harris County Court; Mur-
ray B. Jones, Judge.

Action by I. Gross against the Gulf, Colo-
rado & Santa Fé Railway Company. From
judgment for plaintiff, defendant appeals.
Reversed and remanded.

R. W. Franklin, of Houston, Frank J.
Wren, of Ft. Worth, and Terry, Cavin &
Mills, of Galveston, for appellant. J. E. Ni-
day, of Houston, for appellee.

BROOKE, J. Appellee alleged that on the
22d day of December, 1913, he was the owner
and in possession of 60 head of beef cattle
at Rosenberg, Tex., which he desired to ship
to Houston, Tex., and which appellant ac-
cepted to be safely carried and conveyed to
Houston over its road, from Rosenberg; that
appellant did not with ordinary care and
reasonable diligence and speed carry said cat-
tle from Rosenberg to Houston, but, on the
contrary so negligently and .carelessly con-
ducted itself in the premises that by and
through its negligence, default, and careless-
ness said cattle were delayed a long time
beyond the usual and ordinary time of pas-
sage over said road, to wit, 48 hours beyond
the usual time of passage; that because
thereof appellee was subjected to a great loss
and damage, in that he missed the Christmas
market for which said cattle were shipped,
and by reason of the fall in the market price
of said cattle at the Houston Packing Com-
pany, to which said cattle had been sold and
consigned, and by whom they were refused
because of said delay in delivery, and also
because of the wasting away and excess
shrink in flesh and weight, drawn and
emaciated condition of said cattle due to
their being confined to the cars of defendant
about 48 hours without food or water; that
the actual value of said cattle in Houston,
if they had been delivered within the usual
and customary time, would have been the
sum of $2,870, and that said sum was and
would have been the reasonable market value
of same if they had been conveyed and trans-
ported to destination with reasonable dili-
gence and speed, and with ordinary care;
and that the actual value and the reasonable
market value of said cattle in the condition
in which they did arrive in Houston was not
more than the sum of $2,200. The allegation
was that the cattle were delivered to appel-
lant's agent at Rosenberg on December 22,
1913, and that said agent promised that said
cattle would be shipped that night; that said

agent was the agent also of the Galveston,
Houston & San Antonio Railroad, on which
there was a train to Houston that night, but
that said agent favored the Santa Fé and
held said shipment for same. It was also
alleged that the cattle were carried to Gal-
veston instead of being set out at Alvin, and
in consequence thereof were not delivered in
Houston until midnight of December 24th,
or the morning of the 25th, Christmas day;
that with reasonable speed and diligence such
shipment could have arrived at Houston and
have been delivered to the appellee at the
Houston Packing Company at about 10
o'clock on Tuesday, the 23d of December;
that appellant did not feed and water said
cattle as it was bound and obligated to do
after delivery to it or while in its care and
custody; that by reason of default and care-
lessness of appellant, its agents and servants,
said cattle were not delivered to appellee in
a marketable condition; and that because
thereof said Houston Packing Company re-
fused to accept said cattle, and as there was
no market for same in said condition appel-
lee was forced to place said cattle on a pas-
ture and feed them back to a marketable
condition. Appellee sued for a total damage
of $550.

Appellant answered by general denial and
general demurrer and specially answered al-
leging that the appellee was advised, at the
time he placed his cattle in the pens at
Rosenberg, that appellant's line was washed
out between Rosenberg and Alvin, Tex., and
that the time when it would be in order was
not known to the said appellant, but that it
was the intention of appellant to operate
train No. 29 on Tuesday, December 23d, as
the first train out of Rosenberg. Appellant
further alleged that the shipment reached
the Houston stockyards and was unloaded
there and watered at 1;45 a. m. on December
25th, and that no demand was made for said
cattle until about 1 o'clock p. m. on that day;
that the cattle were ready for delivery to
the appellee on the afternoon of December
25th, but that he failed and refused to call
for said cattle until 3 o'clock the next after-
noon; that said cattle, while being held in
the pens at Houston, were fed in accordance
with instructions of appellee, and if they suf-
fered any damage during said time the same
was the fault of appellee himself in not
ordering sufficient feed to be given them.

The case was submitted to the jury on the
following special issues:

"Question No. 1. Answer whether or not the
Gulf, Colorado & Santa Fé Railway Company
delivered the shipment of cattle in question at
Houston within a reasonable length of time
after said shipment was accepted by said de-
fendant for transportation from Rosenberg,
Tex., to Houston, considering all the facts and
circumstances in evidence in this case." To this
question the jury answered, "No."

"Question No. 2. If you have answered No.
1 in the negative and only in that event, then

answer whether or not the unreasonable delay, if any, on the part of the defendant company, was the proximate cause of any damage to the shipment of cattle." To this question the jury answered, "Yes."

"Question No. 3. What would have been the reasonable market value of said shipment of cattle in Houston at the time of its arrival if said shipment had arrived within a reasonable length of time after its acceptance for transportation by the defendant at Rosenberg?" To this question the jury answered, "$2,870."

"Question No. 4. What was the actual value of said shipment of cattle in Houston at the time of the delivery of said shipment to the Houston stockyards in the condition said shipment of cattle was at the time of said delivery?" To this question the jury answered, "$2,370."

Judgment was rendered in favor of plaintiff in the sum of $500. Motion for new trial was submitted and overruled, and the case is properly in this court for review.

[1] The first assignment of error challenges the action of the lower court in refusing to submit special charge No. 12 requested by defendant, as follows:

"You are instructed to find for defendant, as the plaintiff has failed to make out a case against the defendant."

There are two propositions under this assignment, to wit:

(a) "The only ground of negligence alleged being an unreasonable delay in the delivery of the shipment at point of destination, and it being shown by the undisputed evidence that such delay was caused by an act of God, the court should have instructed the jury to find for the defendant."

(b) "Where a portion of the delay in the transportation of cattle is unavoidable and due to an act of God and a portion is negligent, there can be no recovery, if, notwithstanding the negligent delay, the cattle would not have reached their destination in time for the market for which they were shipped."

On the contrary, it is urged that whether or not appellant was guilty of negligence under all the facts and circumstances was a question for the jury, and, there being abundant evidence supporting its finding, the appellate court will not disturb said finding; and where the disability, or so-called act of God, is existent and known to carrier at time property is received for shipment, and carrier fails to advise shipper of existing conditions, and fails to stipulate against their consequences, carrier will not be excused from liability.

There is no question about the proposition that negligence is a question of fact for the jury, and there is in this record evidence which, if believed, was to the effect that the excuses for the delay were known when the shipment was received; and therefore, without going into the details, it is sufficient to say that, while the facts were sharply contested, it was shown by the testimony that appellant's agent at Rosenberg did promise that the shipment of cattle would get out the same day and would arrive at destination the next morning over appellant's road, so that in our judgment this assignment must be overruled.

[2] The second assignment of error is adopted as a proposition, and is as follows:

"The defendant moved the court to set aside the verdict and the judgment rendered thereon because said verdict is contrary to the great weight and preponderance of the testimony, because the same showed that said shipment was only on the cars 38 hours, 5 hours of which was due to the washout and 9 hours of which was used in transporting said cattle from the yards of the defendant to the stockyards designated by the plaintiff, and the testimony of the agent of said stockyards company, which was plaintiff's agent, showed that said cattle were in good condition when they were delivered at said place, and the only testimony as to their condition was that of the plaintiff, who did not see them until the afternoon of December 26th, at about 3:45 p. m., which was more than 36 hours after they arrived at destination, and the plaintiff himself attributed a large portion of the damage to the fact that said cattle were placed in pens that were too small which caused them to hook and jostle each other, further adding to the damage which they had already sustained. (b) Because the testimony shows that said shipment under all circumstances and conditions moved within a reasonable time, and that the same moved out of Rosenberg on the first freight train available at that time to move said shipment, and that the only delay in the transit of said cattle was the delay of 6 or 8 hours in the city of Houston, at which time plaintiff contends he could not have sold them."

The proposition under this assignment is that, the plaintiff himself having requested the defendant to deliver the shipment to a different destination in the city of Houston after the cattle had arrived in said city, then the defendant was not liable for any injuries occurring after the unloading of the shipment at said destination, to wit, the Houston stockyards; and that, even if it should be held that the defendant was negligent in delaying the shipment after its arrival in the city of Houston, the undisputed evidence showing that the cattle could not have been sold on the market of that date even if there had been no delay, the verdict should have been for the defendant.

It is urged in behalf of appellee that the plaintiff became liable as a common carrier after receiving the shipment of cattle in its pens at Rosenberg, and that the delivery and acceptance are necessary to complete a shipment, and the fact that said train arrived in the switching yards of appellant some three or four miles from destination late in the afternoon of December 24th is in no sense delivery.

The contentions of the appellee seem to be sound, and therefore this assignment must be overruled.

The third and fourth assignments are grouped, and are as follows:

(a) "The court erred in refusing to submit special charge No. 5 requested by defendant, as follows: 'If from the evidence you believe that after said shipment was received for transportation by defendant it was delayed in transit, but you believe that said delay was due to an inevitable accident, over which the defendants had no control, and which they could not have prevented, then you will instruct that the defendant would not be liable for such delay.'"

(b) "The court erred in refusing to submit

special charge No. 6 requested by defendant, as follows: 'If from the evidence you believe there was delay in handling said shipment, but nevertheless believe the same was due to congestion arising out of the washout of defendant's tracks, and that the defendant handled said shipment under all the circumstances in as reasonable a time as it could have done, then you will find for the defendant.' "

It is urged in behalf of appellee that where the disability is existent and known to the carrier at the time property is received for shipment, and carrier fails to advise shipper of existing conditions, and fails to stipulate against their consequences, carrier will not be excused from liability.

We have already passed upon practically the same assignment, and therefore these assignments are overruled.

[3] The fifth and sixth assignments will be considered together, as follows:

(a) "The court erred in refusing to submit special charge No. 1 requested by defendant, as follows: 'You are instructed that the defendant will not be liable to the plaintiff for any damages accruing after the delivery of said cattle to the Houston stockyards.' "

(b) "The court erred in refusing to submit special charge No. 10 requested by the defendant, as follows: 'You are instructed that, as plaintiff ordered the stock delivered to Houston stockyards, defendant would not be liable for said stockyards' refusal to deliver same to plaintiff.' "

The propositions under this assignment are that, plaintiff having requested defendant to deliver his shipment to the Houston stockyards, the liability of defendant ceased when shipment had been unloaded in said yards; and that defendant could not be held liable for plaintiff's failure to communicate with the Houston stockyards so that he could receive cattle when delivered there.

It is contended, on the other hand, that under the fourth special issue no damage arising after the delivery of the shipment to the Houston stockyards could have been considered by the jury, hence there was no error in refusing the special charges complained of by appellant.

This contention seems to be correct, and the assignments must be overruled.

The seventh, eighth, and ninth assignments will be considered together, as follows:

(a) "The court erred in refusing to submit special charge No. 4 requested by defendant, as follows: 'If from the evidence you believe that defendant moved said shipment by the first train in which said cars could have been carried, then defendant would not be liable for any delay up to the time said shipment actually left Rosenberg.' "

(b) "The court erred in refusing to submit special charge No. 7 requested by defendant, as follows: 'You are instructed that the defendant would not be responsible for any delay prior to the time that said shipment was actually delivered to them on the car, which under the undisputed evidence was on the morning of December 23d.' "

(c) "The court erred in refusing to submit special charge No. 11 requested by the defendant, as follows: 'If from the evidence you believe that defendant moved said shipment in the first scheduled freight train, or in the first ex-

tra freight train that could have handled said shipment, then defendant would not have been liable for any damage accruing by said delay.' "

The propositions under this assignment are that the undisputed testimony being to the effect that defendant's agent advised plaintiff of the congested condition of its tracks resulting from the washout, and that, notwithstanding said advice, plaintiff kept his cattle in the pens at point of origin waiting for a train, the jury should have been instructed that the defendant would not be liable for any injury to said cattle caused by being held in said pens; and that, the undisputed evidence showing that defendant's agent refused to accept said shipment and refused to issue billing therefor at the time same was tendered on account of the condition of its tracks, the jury should have been instructed that the defendant was not liable for any injuries accruing to the stock before they were actually received by it for shipment; and that, the plaintiff himself having assumed the responsibility of placing his cattle in the pens to await the arrival of a train on which they could be shipped, the defendant was not liable for any injuries occurring to said cattle while in the pens.

The shipment was beef cattle and intended for the Christmas market, and appellant's agent was notified of that fact at the time of delivery to its pens. It was shown that the cattle would have been accepted by the Houston Packing Company if they had been delivered on the morning of the 23d of December. Mr. Hotchkiss, buyer for the packing company, said: "I would have taken the cattle if they had come on contract time. We don't take any Christmas." The testimony is further that appellee rang up Mr. Hotchkiss and inquired if the cattle had come in, and he said, "No." He then rang up the Santa Fé on the 24th. They told him that they would have a train between 2 and 5 o'clock; that he told them it was no use to take these cattle over to the packing house, and he ordered them over to the Southern Pacific yards, "because we wasn't going to have no market; in other words, Mr. Hotchkiss or anybody wasn't going to buy any cattle for Christmas." Without going into details with reference to the matter, it is sufficient to say that in our opinion there was no error in the action of the court in this matter, and therefore the assignment must be overruled.

[4] The tenth and eleventh assignments are as follows:

(a) "The defendant moves the court to set aside said verdict and the judgment rendered thereon, because there is no testimony to support the finding of the actual value at the time of the delivery of said cattle to the stockyards, or the amount of damage they sustained, because they were not seen by the plaintiff until 36 hours after their delivery and there was no testimony as to their actual value on the 24th

or 25th, and the only testimony as to their actual value was on the 26th, which was the statement of plaintiff, which was not sufficient, because it did not show that he knew what the actual or market value of said cattle was, the only basis therefor being his statement that he thought the price of the cattle was the same on Friday as it was in Tuesday, and therefore there was no testimony upon which a jury could find the actual value of said cattle at the time of their delivery, and plaintiff did not know how many heifers, yearlings, bulls, cows, and steers were in said shipment and the price of the same varied."

(b) "The court erred in refusing to strike out the testimony of plaintiff as to the value of said cattle on December 26th, because the witness testified, when tested on cross-examination, defendant not being allowed to test him on direct examination, that he had no knowledge of 'what the market was on December 26th,' and that he did not know what the cattle were worth in Houston on December 26, 1913, and that he did not know what cattle were worth in Houston on December 24th, all of which is more fully set out in defendant's bill of exception."

The propositions under this assignment are:

(1) The undisputed testimony showing that the shipment was unloaded in the pens at the Houston stockyards in the early morning of December 25th, and there being no testimony that there was no market for said cattle on December 25th, plaintiff should not have been allowed to introduce testimony as to the actual value of the cattle on the 26th.

(2) The testimony of the plaintiff showing that he had no way of knowing what the market value of the cattle was on December 26th, then there was no testimony before the jury upon which it could base a finding as to such market value, and therefore the verdict should have been for the defendant.

(3) It being shown when the plaintiff was tested on cross-examination that he had no knowledge of what the market value of said cattle was on December 26th, the court should have sustained defendant's motion to strike out the testimony of plaintiff as to the market value of the cattle on the 26th.

On the contrary, it is urged that, as to that issue, that there was no market for said shipment of cattle on Christmas, there was no request for submission of said issue, and said issue was not submitted to the jury. On appeal such issue will be presumed to have been found so as to support the judgment.

It seems by the evidence that there was a failure on the part of appellee to prove the market value of the cattle at the place of destination, either on the 24th, the 25th, or the 26th. The true measure of damages in cases of this character is the difference in the reasonable market value of such shipment at place of destination at the time it should have arrived, if same had been handled in the usual and customary time, and the reasonable market value of such shipment at the time it actually arrived at destination in the condition in which it did arrive.

In the instant case there was no attempt on the part of appellee to prove that there was not a market value in the city of Houston on either the 24th, the 25th, or the 26th, and there being no proof that there was no market value in Houston during the period of the 24th, 25th, and 26th, proof should not have been admitted of the actual value, and in our opinion it was error on the part of the court to charge, as he did in the third paragraph of his charge:

"What was the actual value of said shipment of cattle in Houston at the time of delivery of said shipment to the Houston stockyards in the condition said shipment of cattle was at the time of said delivery?"

There is nothing in this record to show any excuse or justification of the trial court in giving the charge complained of, and we will state that the evidence in this case does not show what the market value of said cattle was on either the 24th, the 25th, or 26th, which covered the time of delivery at the point of destination in the city of Houston.

It will be seen that the consideration of the tenth and eleventh assignments includes the thirteenth assignment, with reference to the charge of the court as to the actual value of said shipment of cattle in Houston at the time of the delivery of said shipment to the Houston stockyards in the condition said shipment of cattle was in at the time of said delivery.

On account of the error of the trial court in his charge to the jury as to the measure of damages, and also on account of the absence of testimony showing the actual market value of the cattle at the time of delivery, this cause will necessarily have to be reversed and remanded.